1242

BELL FINANCE CO., INC., Respondent v. The SOUTH CAROLINA
DEPARTMENT OF CONSUMER AFFAIRS, Appellant.

(374 S. E. (2d) 918)

Court of Appeals

*Steven W. Hamm* and *Philip S. Porter, Dept. of Consumer Affairs,* Columbia, *for appellant.*

*T. Emmet Walsh,* of *Gaines & Walsh,* Spartanburg, *for respondent.*

Heard Oct. 11, 1988.

Decided Nov. 14, 1988.

GOOLSBY, Judge:

This case involves the chapter within the South Carolina Consumer Protection Code that relates to consumer loans. CODE OF LAWS OF SOUTH CAROLINA §§ 37-3-101 *et seq.* (1976 and Supp. 1987). The basic question that the South Carolina Department of Consumer Affairs raises in its appeal concerns whether the filing requirements of Section 37-3-305(8) of the South Carolina Code of Laws (1976 and Supp. 1987), apply to restricted lenders such as the respondent Bell Finance Company, Inc. We hold that they do so and reverse.

Bell Finance, as a "restricted lender," is licensed by the South Carolina Board of Financial Institutions pursuant to the South Carolina Consumer Finance Act to make "restricted loans" in this state. *See* CODE OF LAWS OF SOUTH CAROLINA §§ 34-29-10 *et seq.* (1976 and Supp. 1987) (statutes comprising the South Carolina Consumer Finance Act); *Id.* §§ 37-3-103 and 37-3-501(3) and (4) (statutes defining the terms "restricted loan" and "restricted lender").

On June 5, 1984, before the end of the state's 1983-1984 fiscal year, Bell Finance filed a maximum rate schedule with the Department; however, it did not file a maximum rate schedule with the Department before the end of the state's next fiscal year.

When the Department discovered Bell Finance did not file a maximum rate schedule at any time during the state's 1984-1985 fiscal year, the Department informed Bell Finance

that all loans made by it on or after July 1, 1985, and until it received a certified maximum rate schedule from Bell Finance would be limited to an annual percentage rate of eighteen percent and that Bell Finance would be required to adjust all loans made during that period to show an annual percentage rate of eighteen percent.

Bell Finance filed a maximum rate schedule with the Department on December 29, 1985.

Sometime later Bell Finance initiated the instant action after an administrative interpretation sought by it from the Department resulted in an opinion by the Department that Bell Finance was required to refund all charges in excess of eighteen percent on all loans made by it during the six-month period its maximum rate schedule was not on file with the Department.

The Department counterclaimed for a declaratory judgment in response to Bell Finance's petition for review of the Department's administrative interpretation. Its counterclaim sought a declaration that the charges imposed on loans made by Bell Finance between July 1, 1985, and December 29, 1985, with an annual percentage rate in excess of eighteen percent were excess charges and that Bell Finance was required to adjust the loans made by it to South Carolina borrowers during that period by either refunding to borrowers or crediting them with all excess charges assessed against their accounts.

The circuit court denied the Department's counterclaim, holding the questioned charges were not excess charges subject to refund. In reaching this conclusion, the circuit court viewed the word "creditor," as used in Section 37-3-305(8), as not including "a restricted lender," such as Bell Finance. We disagree, however, with the conclusion reached by the circuit court and we do so for the reasons given below.

Section 37-3-305(8),[1] which was added to the South Carolina Consumer Protection Code in 1984 [63 STAT. Act No. 355 § 12 at 1639 (1984)], provides:

---

[1] Section 37-3-305(8) was amended by Act No. 56 of 1987, which made certain grammatical changes and increased the filing fee to twenty dollars.

Every creditor must file at least one maximum rate schedule and pay at least one ten dollar filing fee during each state fiscal year disclosing that creditor's existing maximum rates. If this filing does not change any maximum rates previously filed, the creditor will not be required to alter posted maximum rates. If any creditor has not filed a maximum rate schedule with the Department of Consumer Affairs since the beginning of the previous state fiscal year then on July first of the following year the filing will no longer be effective and the maximum finance charge that the creditor may impose on any credit extended after that date may not exceed eighteen percent per annum until such time as the creditor files a revised maximum rate schedule that complies with this section.

In construing a statute, the words used should be given their ordinary meaning, nothing else appearing. *Multimedia, Inc. v. Greenville Airport Commission*, 287 S. C. 521, 339 S. E. (2d) 884 (Ct. App. 1986). Where the statute, however, contains words that are statutorily defined, the statutory definitions should generally be followed in interpreting the statute. *Brown v. Martin*, 203 S. C. 84, 26 S. E. (2d) 317 (1943) (legislative definitions are generally binding upon the courts).

Here, the term "creditor" has been defined by the General Assembly in Section 37-1-301(13) to include a "person who grants credit in a credit transaction." *See also* CODE OF LAWS OF SOUTH CAROLINA § 37-1-201(7)(c) (1976) (defining the term "creditor" for the purpose of that section to include a "person who grants credit in a consumer credit transaction"). Clearly, Bell Finance, a licensed restricted lender, falls within the statutory definition of the term "creditor," irrespective of whether Section 37-3-305(8) is a penal statute requiring a strict construction, as Bell Finance contends and the circuit court held it to be, or is a remedial statute requiring a liberal construction, as the Department contends it to be. *See* 82 C. J. S. *Statutes* § 389b(1) at 930 (1953) ("Penal statutes should not be subjected to any strained or unnatural construction in order ... to exclude from their operation cases which the words, ... in the sense in which the legislature used them, would comprehend.").

The principal basis for the circuit court's exclusion of restricted lenders from the operation of Section 37-3-305(8) is the presence of qualifying language following the word "creditor" in Subsection (1) of Section 37-3-305 and the absence of such qualifying language in Subsection (8) thereof. Section 37-3-305(1) provides in part:

> Every creditor ... *making supervised or restricted consumer loans* ... in this State shall on or before the effective date of this section ... file with the Department ... and ... post in one conspicuous place in every place of business in this State in which offers to make consumer loans are extended, a certified maximum rate schedule. ... [Emphasis ours.]

Unlike the circuit court, however, we can find no basis for according the word "creditor" a different meaning in Subsection (8) of Section 37-3-305 than that to be accorded the word in Subsection (1) thereof. The word "creditor" carries the same meaning throughout the statute. *See Busby v. State Farm Mutual Automobile Insurance Co.*, 280 S. C. 330, 333, 312 S. E. (2d) 716, 718 (Ct. App. 1984) ("Where the same word is used more than once in a statute it is presumed to have the same meaning throughout unless a different meaning is necessary to avoid an absurd result.").

The qualifying language that follows the word "creditor" in Subsection (1) of Section 37-3-305, the phrase "making supervised or restricted consumer loans," serves merely to limit the application of that subsection to particular creditors, namely, supervised and restricted lenders only. The absence of similar language after the word "creditor" in Subsection (8) of Section 37-3-305 means that its provisions are not so limited but are applicable to all creditors, including supervised and restricted lenders.

Another basis for the circuit court's holding that Section 37-3-305(8) does not apply to restricted lenders is the conflict it perceived would exist between it and the South Carolina Consumer Finance Act if Section 37-3-305(8) were deemed applicable to restricted lenders. Specifically, the circuit court points to Section 34-29-140 of the Code, the provision of the South Carolina Consumer

Finance Act that prescribes the maximum finance charges restricted lenders may contract for and receive.

We recognize that the provisions of the South Carolina Consumer Finance Act control where there is any conflict or inconsistency between it and the South Carolina Consumer Protection Code. CODE OF LAWS OF SOUTH CAROLINA § 37-1-106[2] (1976). But we also recognize that statutes dealing with the same subject matter must be harmonized, if possible. *See Smith v. S. C. State Highway Commission,* 138 S. C. 374, 136 S. E. 487 (1927).

There is, however, no conflict or inconsistency between Section 37-3-305(8) and any provision of the South Carolina Consumer Finance Act, including Section 34-29-140. The South Carolina Consumer Finance Act neither contains a provision requiring the filing of a certified maximum rate schedule annually nor contains any provision that would in any way negate the requirement of Section 37-3-305(8) that such a schedule be filed.

The annual filing requirement prescribed by Section 37-3-305(8), which compliments the initial filing requirement prescribed by Section 37-3-305(1) and plainly applies to restricted lenders, is simply an additional condition that a restricted lender must fulfill if it wishes to impose finance charges in excess of eighteen percent but within the range of the maximum charges allowed by Section 34-29-140.

We do not overlook the contention made by Bell Finance that Section 37-3-305(8) has no application to restricted lenders because of the exclusion contained in Section 37-1-202. The latter section provides in pertinent part:

Except as otherwise provided, this title does not apply to:

. . . .

---

[2] Section 37-1-106 provides:

Except for § 37-3-512 and except where Chapter 29 of Title 34 is amended by specific reference thereto, insofar as restricted lenders and restricted loans are concerned any inconsistency or conflict between any provision of this Title and Chapter 29 of Title 34 shall be resolved in favor of Chapter 29 of Title 34, but Chapter 29 of Title 34 shall apply only to restricted loans and restricted lenders.

(7) Rates and charges on restricted loans [§ 37-3-501(3)]; [*sic*] which shall be subject to the applicable provisions of Title 34; . . . .

Bell Finance maintains that, inasmuch as Section 37-3-305(8) has the effect of reducing the maximum rate a lender may charge if it has failed to file its annual maximum rate schedule, Section 37-1-202(7) precludes its application to restricted lenders.

This contention, however, has no merit for the simple reason that it ignores the introductory phrase used by Section 37-1-202, the phrase "[e]xcept as otherwise provided." Section 37-3-305(8) "otherwise provide[s]." It does so by limiting a restricted lender's ability to impose any finance charge higher than eighteen percent when the restricted lender fails to file an annual maximum rate schedule with the Department.

Indeed, Section 37-3-102,[3] which declares the scope of Chapter 3, the chapter in which the General Assembly placed 37-3-305(8), makes manifest the applicability of Section 37-3-305(8) to restricted loans and the inapplicability of the exclusionary provisions of Section 37-1-202(7) to the maximum rate schedule filing requirements imposed by Section 37-3-305(8) upon all creditors, including restricted lenders.

Reversed.

SANDERS, C. J., and GARDNER, J., concur.

---

[3] Section 37-3-102 provides in part:

[Chapter 3] applies to consumer loans including supervised loans and, except as provided in §§ 37-3-200 and 37-3-500, restricted loans. . . .