750 S.E.2d 65

**CENTEX INTERNATIONAL, INC. and Affiliates, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF REVENUE, Respondent.**

**Appellate Case No. 2011–196887.**

**No. 27288.**

Supreme Court of South Carolina.

Heard April 17, 2013.
Decided July 24, 2013.
Rehearing Denied Sept. 20, 2013.

134

Burnet Rhett Maybank, III, of Nexsen Pruet, LLC, of Columbia, for Appellant.

Milton Gary Kimpson, Adam Nicholas Marinelli, of Columbia; Harry A. Hancock, of Dean B. Bell Law Firm, LLC, of Hilton Head, for Respondent.

Justice BEATTY.

Centex International, Inc. (Appellant) filed consolidated income tax returns for its three corporate affiliates that wholly owned the general partnership of Centex Homes, a developer of residential communities. Appellant appeals the Administrative Law Court's (ALC's) order upholding the South Carolina Department of Revenue's (the Department's) denial of its claim for infrastructure tax credits for the 2002–2005 income tax years. Appellant contends the ALC erred in: (1) concluding the corporate affiliates of Appellant were not eligible to claim the infrastructure tax credit as partners of Centex Homes; (2) its interpretation and application of the aggregate and entity theories of partnership taxation; and (3) concluding that Appellant and its affiliates are not a single taxpayer that may claim the infrastructure tax credit on its consolidated tax return. This Court certified the appeal from the Court of Appeals pursuant to Rule 204(b), SCACR. We affirm.

## I. Factual/Procedural History

The underlying facts of the instant case are not in dispute. Centex Homes is a general partnership that operates in South Carolina and is wholly owned by Appellant's three corporate affiliates. Centex Homes acquires and develops land for the purpose of establishing communities and constructing single-family homes in South Carolina and other states. As a result of constructing developments within this state, Centex Homes incurred infrastructure project expenses of approximately $68,000,000.

In 2007, Appellant filed amended corporate income tax returns for tax years 2002 to 2005, which included amended partnership returns for Centex Homes. In these returns, Appellant claimed tax credits in the amount of $5,113,040 based upon the expenses incurred by Centex Homes for the development of roads and water and sewer lines. Appellant sought these credits pursuant to section 12–6–3420 of the South Carolina Code, which provides in pertinent part:

(A) A **corporation** may claim a credit for the construction or improvement of an infrastructure project against taxes due under Section 12–6–530 for:

(1) **expenses paid or accrued by the taxpayer;**

(2) contributions made to a governmental entity; or

(3) contributions made to a qualified private entity in the case of water or sewer lines and their related facilities in areas served by a private water and sewer company.

S.C.Code Ann. § 12–6–3420(A) (2000) (emphasis added) (the "Infrastructure Credit Statute").[1]

The Department conducted a Field Audit of Appellant for the South Carolina corporate income tax periods ending March 2002 through March 2005. The Department's audit, which was dated July 25, 2007, determined Appellant: (1) incorrectly calculated its South Carolina corporate income by failing to apportion the amounts of revenue from the out-of-state intangibles generated from activity in South Carolina; and (2) was not entitled to the claimed infrastructure tax credits as the credits were earned by the partnership, Centex Homes, rather than the corporation.

On October 23, 2007, Appellant filed a written protest in response to the Department's audit and notice of proposed assessment. On December 4, 2009, the Department issued Appellant its final Determination in which it confirmed the Field Audit and set forth the legal basis for its adjustments and denial of the claim for credits. Specifically, the Department denied Appellant's claim for the infrastructure tax credits because "Centex Homes was not eligible for the corporate tax credit as a general partnership and therefore could not pass through the credit to its individual corporate partners."

Upon receipt of the Determination, Appellant requested a contested case hearing before the ALC to dispute the Department's determination. The Department filed a Motion for Partial Summary Judgment on the infrastructure tax credit issue. In response, Appellant filed a Cross–Motion for Summary Judgment on the same issue. Both parties stipulated

---

1. We cite to the code section in effect at the time of the designated tax years as it was amended in 2006. Act No. 335, 2006 S.C. Acts 2684. This amendment did not effectuate any substantive changes.

that no issue of fact remained on the infrastructure tax credit issue.

Following a hearing, the ALC granted the Department's motion and denied Appellant's cross-motion by order dated June 2, 2011. In so ruling, the ALC initially determined the Infrastructure Credit Statute mandated that a corporation *directly* incur the expenses that generate the claimed tax credit. The ALC reasoned that section 12–6–3420, when read in its entirety, limited "the taxpayer" in subsection (A)(1) to the "corporation" attempting to claim the credit under subsection (A). Because the infrastructure expenses were directly incurred by Centex Homes, a general partnership, the ALC concluded Appellant could not claim the credit "based upon its indirect involvement in the partnership's business activity." Additionally, the ALC found this conclusion was consistent with the Department's long-standing policy that "a credit must be used by the taxpayer that earns it."

Despite this conclusion, the ALC acknowledged a statutory exception that "would allow an avenue for indirect expenditures to create access to tax credits." Specifically, section 12–6–3310(B)(1) outlines a "pass-through" provision, which states:

Unless specifically prohibited, an "S" corporation, limited liability company taxed as a partnership, or **partnership that qualifies for a credit pursuant to this article may pass through the credit earned to** each shareholder of the "S" corporation, member of the limited liability company, **or partner of the partnership.**

S.C.Code Ann. § 12–6–3310(B)(1) (Supp.2010) (emphasis added) (the "Pass–Through Statute").[2] The ALC interpreted this code section to mean that "a tax credit may only be passed through to individual partners after the partnership itself *qualifies* for the tax credit." Because the ALC found the infrastructure tax credit was limited solely to corporations, the court concluded that a partnership cannot qualify to claim the credit. The ALC explained that, "[i]n order for the flow

---

2. We cite to the 2010 supplement as that is the date cited in the ALC's order. However, we would note that subsection (B)(1) became effective on June 18, 2003. Act No. 69, 2003 S.C. Acts 733. Section 12–6–3310 was subsequently amended on June 12, 2008 to provide for tax credits claimed by a limited liability company. Act No. 352, 2008 S.C. Acts 3460.

through provisions to remain consistent with the corporate limitations of § 12–6–3420, the word 'claim' must be interpreted as synonymous with 'generate.' " Thus, the ALC concluded that "because the partnership was not qualified to claim the tax credit in the first place, none of its corporate partners may do so under § 12–6–3310(B)(1)."

In reaching this ultimate conclusion, the ALC rejected Appellant's contentions that: (1) provisions for partnerships in the Internal Revenue Code, which have been adopted by South Carolina,[3] dictate that the tax credit be treated as if the individual corporate partners generated the credits directly under a modified "aggregate theory"; and (2) disallowance of the infrastructure credits would be inequitable as the corporate partners "spent over 68 million dollars on infrastructure and have to pay corporate income taxes on their distributive share from the partnership."

Subsequently, Appellant filed a timely motion for reconsideration pursuant to Rule 59, SCRCP. After hearing arguments from the parties, the ALC denied Appellant's motion for reconsideration and specifically confirmed each of the prior rulings. Additionally, the ALC rejected Appellant's contention that it was entitled to claim the infrastructure credit because it filed a consolidated return and, thus, all of its affiliates constituted a single taxpayer for purposes of the credit. The ALC reasoned that, "[i]n order for a consolidated group to claim the credit on a consolidated basis, § 12–6–3420 requires that at least one corporation of the group must first be entitled to the credit." Although the ALC acknowledged that a credit can be applied on a consolidated basis, it found the corporate partners in the instant case were never entitled to the credit in the first place.

Appellant filed a timely appeal with the Court of Appeals. This Court certified the appeal pursuant to Rule 204(b), SCACR.

## II. Standard of Review

Because the parties presented this tax case in the posture of a motion for summary judgment, it is governed by Rule 56(c)

---

**3.** *See* S.C.Code Ann. §§ 12–6–40, –50, –600 (Supp.2010) (adopting select provisions of the Internal Revenue Code).

of the South Carolina Rules of Civil Procedure. This rule provides a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP.

 "Tax appeals to the ALC are subject to the Administrative Procedures Act (APA)." *CFRE, L.L.C. v. Greenville County Assessor,* 395 S.C. 67, 73, 716 S.E.2d 877, 880 (2011). "The decision of the Administrative Law Court should not be overturned unless it is unsupported by substantial evidence or controlled by some error of law." *Original Blue Ribbon Taxi Corp. v. S.C. Dep't of Motor Vehicles,* 380 S.C. 600, 604, 670 S.E.2d 674, 676 (Ct.App.2008); *see Media Gen. Commc'ns, Inc. v. S.C. Dep't of Revenue,* 388 S.C. 138, 144, 694 S.E.2d 525, 528 (2010) ("A reviewing court may reverse the decision of the ALC where it is in violation of a statutory provision or it is affected by an error of law." (citing S.C.Code Ann. § 1–23–610(B)(a), (d) (Supp.2009))). However, "[q]uestions of statutory interpretation are questions of law, which we are free to decide without any deference to the court below." *CFRE,* 395 S.C. at 74, 716 S.E.2d at 881.

 "The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Sloan v. Hardee,* 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007). "When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning." *Id.* In interpreting a statute, "[w]ords must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *Id.* at 499, 640 S.E.2d at 459. Further, "the statute must be read as a whole and sections which are a part of the same general statutory law must be construed together and each one given effect." *S.C. State Ports Auth. v. Jasper County,* 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006). Accordingly, we "read the statute as a whole" and "should not concentrate on isolated phrases within the statute." *CFRE,* 395 S.C. at 74, 716 S.E.2d at 881.

■■ In conjunction with these rules of statutory construction, we must also be cognizant of our policy to strictly construe a tax credit against the taxpayer as it is a matter of legislative grace. *See CFRE,* 395 S.C. at 74, 716 S.E.2d at 881 ("[I]nterlaced with these standard canons of statutory construction is our policy of strictly construing tax exemption statutes against the taxpayer."); *SCANA Corp. v. S.C. Dep't of Revenue,* 384 S.C. 388, 394, 683 S.E.2d 468, 471 (2009) (recognizing that a tax credit is analogous to a tax deduction and, thus, is strictly construed against the taxpayer (Beatty, J., dissenting)). "This rule of strict construction simply means that constitutional and statutory language will not be strained or liberally construed in the taxpayer's favor." *CFRE,* 395 S.C. at 74, 716 S.E.2d at 881 (citation omitted). "It does not mean that we will search for an interpretation in [DOR]'s favor where the plain and unambiguous language leaves no room for construction." *Id.* at 74–75, 716 S.E.2d at 881. "It is only when the literal application of the statute produces an absurd result will we consider a different meaning." *Id.* at 75, 716 S.E.2d at 881 (citation omitted).

## III. Discussion

### A. Arguments

Initially, we note that Appellant does not assert the Department unjustly deprived it of a $68,000,000 expense against its income for infrastructure costs. Instead, Appellant contends it was denied additional tax credits in the amount of $5,000,000. In support of this contention, Appellant posits four primary theories upon which it can claim the credit.

First, because a partnership is included in the statutory definition of "taxpayer," the infrastructure expenses paid by Centex Homes satisfied the provision of the Infrastructure Credit Statute that requires "expenses paid or accrued by the taxpayer." Second, Centex Homes "earned the credit by paying the qualifying expenditures" and, thus, constituted a "partnership that qualifies for a credit" under the Pass–Through Statute. Third, Appellant's corporate partners directly earned the credit as any expenses made by Centex Homes were not strictly those of the partnership but, rather, were attributed to each corporate partner in accordance with

their ownership interest. Finally, the consolidated tax return filed by Appellant necessarily included the income and deductions related to the qualifying infrastructure expenses incurred by the "consolidated group" of corporate partners as they constituted a "single taxpayer."

## B. Analysis

### (1) "A Taxpayer" versus "The Taxpayer" under the Infrastructure Credit Statute

Because the term "taxpayer" is statutorily defined to include partnerships, Appellant asserts the plain language of the Infrastructure Credit Statute allows Appellant to claim the tax credit as Centex Homes constitutes a "taxpayer" and, thus, satisfied the requirement of subsection (A)(1) that "expenses [were] paid or accrued by the taxpayer." S.C.Code Ann. § 12–6–3420(A)(1). Simply stated, Appellant maintains Centex Homes was statutorily authorized to earn the credit. In turn, Appellant could claim the credit via its corporate affiliates.

In its argument, Appellant directs the Court's attention to other sections of the Infrastructure Credit Statute to establish that the credit is not strictly limited to corporations. Instead, Appellant asserts the legislature used the word "corporation" in the Infrastructure Credit Statute to identify only the entity that may **claim** the credit. According to Appellant, the use of the term "corporation" did not limit the type of entity that can generate or earn the credit as other entities, such as electric cooperatives, also qualify for the credit.

We find the ALC properly analyzed and rejected each of Appellant's arguments. Although Appellant is correct that the term "taxpayer" is statutorily defined to include partnerships,[4] Appellant uses a forced construction to achieve its desired result.

---

4. Pursuant to the South Carolina Income Tax Act, "**unless otherwise required by the context,**" the term "taxpayer" includes "an individual, trust, estate, **partnership,** association, company, **corporation,** or **any other entity** subject to the tax imposed by this chapter or required to file a return." S.C.Code Ann. § 12–6–30(1) (2000) (emphasis added).

As evident from the plain terms of the statute, the legislature used the phrase "**the** taxpayer" rather than "**a** taxpayer." By using the word "the", the legislature precluded partnerships from earning the infrastructure credit as it relates back to "a corporation." *See People v. Enlow,* 135 Colo. 249, 310 P.2d 539, 546 (1957) ("The word '*the*' is a word of limitation—a 'word used before nouns, with a specifying or particularizing effect, opposed to the indefinite or generalizing force of 'a' or 'an.' ' "). Moreover, the credit is to be applied to corporate income taxes as the legislature specifically referenced S.C.Code Ann. § 12–6–530, which imposes state income taxes on corporations doing business in this state. Thus, the entity earning the credit is limited to the claiming corporation.

 This limitation was purposeful as it is consistent with the general rule that tax credits should be claimed by the entity that earns or generates the credit. *See Berks County Tax Collection Comm. v. Penn. Dep't of Cmty. & Econ. Dev.,* 60 A.3d 589, 592 (Pa.Commw.Ct.2013) ("A tax credit is commonly accepted to mean a direct reduction against the liability for tax owed. As defined in Black's Law Dictionary 1310 (5th ed.1979), a tax credit is a '(t)ype of offset in which the taxpayer is allowed a *deduction from his tax* for other taxes paid.' " (citations omitted)). Furthermore, if we were to take Appellant's argument to its logical extreme, an individual (which is included in the statutory definition of "taxpayer") could generate the credit for a corporation. Thus, when read in the context of the Infrastructure Credit Statute, we conclude the phrase "the taxpayer" specifically refers to "a corporation" attempting to claim the credit in subsection (A).

Finally, we find the other code sections cited by Appellant do not support its position. Reading section 12–6–3420 in its entirety, and not just the isolated sections identified by Appellant, reveals the legislature's intent that a corporation must be the entity that incurs the expenses to generate the tax credit. Significantly, subsections (G), (H), and (I) specifically identify a "corporation" as the entity that may claim the credit. S.C.Code Ann. § 12–6–3420(G), (H), (I) (2000).

Furthermore, Appellant's reliance on the legislature's inclusion of a "qualifying private entity" in subsection (F) of the Infrastructure Credit Statute is not dispositive. S.C.Code

Ann. § 12–6–3420(F) (2000). Essentially, Appellant contends this section authorizes an electric cooperative, as a "qualified private entity," to claim the infrastructure credit. In support of this contention, Appellant references section 12–20–105,[5] a section that provides a tax credit for entities that pay license taxes under section 12–20–100.[6] Because electric cooperatives are not "incorporated in the same manner as traditional corporations," Appellant inferentially argues that a non-corporate entity may claim the infrastructure tax credit; thus, the credit is not limited to corporations.[7]

Appellant's attempt to expand the scope of the Infrastructure Credit Statute is unavailing. Subsections (A)(3) and (C)(1)(c) outline the fact that water and sewer lines deeded to a "qualified private entity," which maintain the infrastructure, are acceptable projects and eligible for the tax credit. S.C.Code Ann. § 12–6–3420(A)(3), (C)(1)(c) (2000). Neither of these sections includes qualified private **non-corporate** entities as possible claimants. Additionally, subsection (C)(2), which defines a "qualified private entity" as properly licensed utilities to which such a project is needed, makes no mention of an electric cooperative. *Id.* § 12–6–3420(C)(2). Accordingly, we find the legislature intended only for a corporate utility company to qualify for the credit.

### (2) "Partnership that Qualifies for a Credit" under the Pass–Through Statute

 Alternatively, Appellant asserts it may claim the credit pursuant to the Pass–Through Statute, which states:

---

**5.** Section 12–20–105 provides tax credits for companies subject to a license tax under section 12–20–100 against its license tax liability for amounts paid in cash to provide infrastructure for an eligible project. S.C.Code Ann. § 12–20–105 (2000 & Supp.2012). This section includes electric cooperatives and cross-references the Infrastructure Credit Statute to preclude a company from claiming a credit under both statutes. *Id.* § 12–20–105(G).

**6.** Section 12–20–100 provides for license tax on utility companies and electric cooperatives. S.C.Code Ann. § 12–20–100 (2000).

**7.** Appellant's argument appears to be based on the "Cross–Reference" in section 12–6–3420, which states, "Utilities companies and electric cooperatives claiming credit under this section ineligible to claim credit against license tax liability, see § 12–20–105." S.C.Code Ann. § 12–6–3420.

**Unless specifically prohibited,** an "S" corporation, limited liability company taxed as a partnership, or **partnership that qualifies for a credit pursuant to this article may pass through the credit earned to** each shareholder of the "S" corporation, member of the limited liability company, **or partner of the partnership.**

S.C.Code Ann. § 12–6–3310(B)(1) (Supp.2010) (emphasis added). Because Centex Homes "made qualified expenditures and contributed to the resulting infrastructure projects to local municipalities on behalf of its corporate partners and therefore earned the credit," Appellant asserts it is "eligible to claim the credit." Appellant further argues there is no statutory provision that "specifically prohibits" the pass through of the tax credit from a partnership to the corporate taxpayer. Additionally, Appellant notes that a 2008 amendment to the Pass–Through Statute provides that limited liability companies, which are taxed as partnerships, are entitled to all credits applicable to corporations. Thus, by implication, the legislature intended for partnerships to qualify for a corporate tax credit.

Strictly construing the Pass–Through Statute, we find that Centex Homes does not qualify for the credit. Although not defined in the statute, the word "qualified" connotes that the entity is "entitled" or "eligible," i.e., possessing the properties or characteristics necessary or complied with specific requirements or precedent conditions to become eligible or entitled. *Black's Law Dictionary* 1116–17 (5th ed.1979); *Merriam–Webster's Collegiate Dictionary* 936 (8th ed.1981). As previously discussed, the infrastructure credit may be claimed only by a corporation; thus, a partnership can never qualify for the infrastructure credit. Such an express limitation constitutes a specific prohibition against a pass through from a partnership to a corporation. Moreover, unlike several other tax credits,[8] the Infrastructure Credit Statute does not contain language incorporating the pass-through provisions of section 12–6–3310.

---

8. *See, e.g.,* S.C.Code Ann. § 12–6–3340 (2000) (Renewable Energy Credit); *id.* § 12–6–3370 (Water Control Structure Credit); S.C.Code Ann. § 12–6–3560 (Supp.2010) (Motion Picture and Advertisement Company Credit).

Furthermore, Appellant's reference to the 2008 amendment does not affect this conclusion. With an effective date of June 12, 2008, the legislature amended section 12–6–3310 to add subsection (C) in order "to provide for the application of tax credits when earned by certain limited liability companies." Act No. 352, 2008 S.C. Acts 3458. Thus, the amended version of section 12–6–3310 expressly authorizes limited liability companies, which are taxed for South Carolina income tax purposes as partnerships and corporations, to **earn** and pass through allowable credits. S.C.Code Ann. § 12–6–3310(C) (Supp.2012).

Although this amendment post-dates the tax years in question, it is instructive as to the intended purpose of the statutes at issue. Specifically, we find the explicit inclusion of limited liability companies and silence as to partnerships indicates a legislative intent to purposefully restrict the types of entities that may earn and pass through tax credits. Had the legislature intended to authorize all entities to earn and pass through tax credits, it would not have been necessary to enact the 2008 amendment as the definition of "taxpayer," which broadly includes "any other entity subject to the tax imposed by this chapter or required to file a return," would have been sufficient to encompass limited liability companies. S.C.Code Ann. § 12–6–30(1) (2000) (defining "taxpayer"). Moreover, by delineating the types of entities that may earn the credit, it is clear that the mere payment of infrastructure expenses is not sufficient to qualify for the credit. Rather, in order to earn the credit, the entity must statutorily qualify and make the requisite expenditures to the infrastructure project.

Because the legislature is presumed to be aware of prior legislation and does not perform futile acts, we find the 2008 amendment represents a conscious decision by the legislature to preclude partnerships from earning and passing through certain tax credits. *See State v. McKnight*, 352 S.C. 635, 648, 576 S.E.2d 168, 175 (2003) ("There is a presumption that the legislature has knowledge of previous legislation as well as of judicial decisions construing that legislation when later statutes are enacted concerning related subjects."); *State ex rel. McLeod v. Montgomery*, 244 S.C. 308, 314, 136 S.E.2d 778, 782 (1964) ("In seeking the intention of the legislature, we must presume that it intended by its action to accomplish something

and not to do a futile thing."). Accordingly, this amendment is confirmation that our decision to deny Appellant's claim for the Infrastructure Tax Credits effectuates the intent of the legislature.

Although our rules of statutory construction mandate this conclusion, we question the wisdom of the statutory language as we believe an entity that legitimately expends funds for state infrastructure deserves to be rewarded with a tax incentive.

Given this harsh result, we have looked to other jurisdictions to see if courts have permitted the type of pass through that Appellant seeks. While these cases are not dispositive as they are based on specific state statutes, we view them as instructive. In *Bell Atlantic Nynex Mobile, Inc. v. Commissioner of Revenue Services*, 273 Conn. 240, 869 A.2d 611 (2005), the Connecticut Supreme Court analyzed whether corporations, which held partnership interests in a partnership, could claim a tax credit as a result of the partnership's payment of personal property taxes on electronic data processing equipment. The court ruled that under the terms of the applicable statute, section 12–217t of the Connecticut General Statutes, the partnership could not establish eligibility for the tax credit as it did not fall within the statutory definition of "taxpayer" for purposes of the statute. *Id.* at 620–21 (citing section 12–213(a)(1) of the Connecticut General Statutes, which defines "taxpayer"). Specifically, the court found "the text of the statute indicates that the legislature intended to grant eligibility for the § 12–217t tax credit to a 'taxpayer' who has paid the personal property taxes on the electronic processing equipment and who can use the tax credit against tax liabilities arising from the corporation business tax or other specific chapters of the tax code." *Id.* at 620. As a result, the court concluded the credit could not pass through to the corporate partners as no tax credit existed for their use. *Id.* at 622.

In reaching this conclusion, the court rejected the corporate partners' argument that partnership law, specifically the conduit treatment of partnership tax attributes, warranted the pass through of the credit. *Id.* at 625. Although the court acknowledged the existence of this theory and statutory pass-

through provisions, it found that "[n]ot every action taken by the partnership passes through to the partners as if they performed the act." *Id.* More specifically, these provisions do not "create credits" as an entity may only be entitled to a credit by "virtue of state law." *Id.*

Finally, the court rejected the corporate partners' claim that denial of the credit "leads to an absurd result because it denies two corporations acting through a partnership a benefit that each party could obtain if it acted on its own." *Id.* at 626. Noting that the corporate partners were "sophisticated business entities," the court found the selection of the partnership form of business was "a critical decision that carries with it certain legal consequences, including tax implications." *Id.* Accordingly, the court concluded that the "legislature's decision to grant a tax credit to certain business forms while denying it to others does not constitute an absurd result" as the "fairness of such decisions remains within the prerogative of the legislature" and not the court. *Id.*

Similarly, the Wisconsin Court of Appeals concluded that a taxpayer corporation was not entitled to income tax reduction for sales and use tax made by a partnership, of which the taxpayer was a general partner, as the tax credit statute allowed a credit for "the sales and use tax ... *paid by the corporation." L & W Constr. Co. v. Wisc. Dep't of Revenue*, 149 Wis.2d 684, 439 N.W.2d 619, 620 (Ct.App.1989) (quoting section 71.0432(2) of the Wisconsin Statutes). Thus, the statute unambiguously provided that a credit was only available to corporations that *directly* pay such sales and use taxes. *Id.* at 621. The court found the possibility that the claiming corporation *could* have become liable for partnerships debts did not bring the corporation within the ambit of the statute. *Id.*

### (3) "Entity" and "Aggregate" Partnership Theories

 Even if the Pass–Through Statute does not permit Centex Homes to earn and pass through the credit to its three corporate partners, Appellant asserts state and federal partnership law dictates that the tax credit be treated as if the individual corporate partners generated the credits directly

under the "aggregate" and "entity" theories [9] of partnership law.

In support of this assertion, Appellant cites: (1) section 702(b) of the Internal Revenue Code (I.R.C.); (2) section 12–6–600 of the South Carolina Code; and (3) *Dalton v. South Carolina Tax Commission,* 295 S.C. 174, 367 S.E.2d 459 (Ct.App.1988) and *Ellis v. South Carolina Tax Commission,* 280 S.C. 65, 309 S.E.2d 761 (1983),[10] wherein this Court addressed the general pass-through statute now codified at section 12–6–600.

Section 702 of the I.R.C. provides in relevant part:

The character of any item of income, gain, loss, deduction, or **credit** included in a partner's distributive share under paragraphs (1) through (8) of subsection (a) shall be determined as if such item were realized directly **from the source from which realized by the partnership, or incurred in the same manner as incurred by the partnership.**

26 U.S.C.A. § 702(b) (West 2013) (emphasis added). In conjunction, section 12–6–600 states:

An entity treated as a partnership for federal income tax purposes is not subject to tax under this chapter. Each partner shall include its share of South Carolina partnership

---

**9.** "Under the 'entity theory' it is the partnership entity which owns its assets, not the partners. Partners are only secondarily liable for the tax debts of the partnership as they are for any debt of the partnership." 68 C.J.S. *Partnership* § 100 (Supp.2013) (footnotes omitted). "Under the 'aggregate theory' as opposed to the 'entity theory,' a partnership is an aggregate of individuals and does not constitute a separate legal entity." *Id.* "Under this view, except for tax and other liabilities and rights created specifically by statute, a partnership has no juridical existence except through its partners." *Id.*

**10.** *See Ellis,* 280 S.C. at 68, 309 S.E.2d at 762–63 (recognizing that although a partnership files an informational return, "the income or losses must be passed through and distributed to the individual partners for separate inclusion or deduction in their individual tax returns"; explaining that "each item of income, gain, loss, deduction or credit is treated as if it were realized or incurred by the partner directly from the source without ever having passed through the partnership"); *Dalton,* 295 S.C. at 180, 367 S.E.2d at 462 (citing *Ellis* and reaffirming principle that every item of gain, loss, deduction or credit retains its character as before the pass through takes place).

income on the partner's respective income tax return. All of the provisions of the Internal Revenue Code apply to determine the gross income, adjusted gross income, and taxable income of a partnership and its partners, subject to the modifications provided in Article 9 of this chapter and subject to allocation and apportionment as provided in Article 17 of this chapter.

S.C.Code Ann. § 12–6–600 (2000).

Based on these authorities, Appellant maintains that a "credit is treated as if it were realized or incurred by the partner directly from the source without ever having passed through the partnership." Thus, because the three partners of Centex Homes were corporate partners that reported tax deductions for qualifying infrastructure expenses, they each earned the credit directly through Centex Homes as an "entity" or through the partners individually as an "aggregate." In turn, the credit could be claimed by Appellant.

We find that none of the above-cited authorities support Appellant's position. Although Appellant is correct that a credit may be passed through a partnership to its individual partners either through the aggregate theory or the entity theory, the condition precedent to the pass through is that the credit is initially earned by the partnership. As previously stated, Centex Homes did not qualify for the infrastructure credit as it may be claimed only by corporations. Thus, there was no credit to distribute or allocate to its three corporate partners and, in turn, Appellant.

### (4) Consolidated Corporate Tax Return

██ Finally, Appellant asserts it should be allowed to claim the credits as its consolidated return reflected the single tax liability of its corporate affiliates.[11] By filing a consolidated return, Appellant maintains that all income tax credits must be determined on a consolidated basis and should, therefore, reduce the consolidated group's tax liability "regardless

---

11. See S.C.Code Ann. § 12–6–5020(A)(1) (2000 & Supp.2012) (authorizing the filing of a consolidated return for a parent corporation and substantially controlled subsidiaries); id. § 12–6–5020(D) (providing that "[a] consolidated return means a single return for two or more corporations in which income or loss is separately determined").

of whether or not the corporation entitled to the credit contributed to the tax liability of the consolidated group." [12] Because the qualifying infrastructure expenditures were incurred by Appellant's corporate partners, Appellant argues it should be allowed to claim the credit against its consolidated tax liability.

Although Appellant is correct that a consolidated group may be treated as a single taxpayer and claim a credit on a consolidated basis, the group must first be **entitled** to the credit as stated in subsection (H) of the Infrastructure Credit Statute. *See* S.C.Code Ann. § 12–6–3420(H) (2000) ("A corporation which files or is required to file a consolidated return is entitled to the income tax credit allowed by this section on a consolidated basis. The tax credit may be determined on a consolidated basis regardless of whether or not the corporation **entitled** to the credit contributed to the tax liability of the consolidated group." (emphasis added)).

In the instant case, neither the Centex Homes partnership nor its corporate partners were ever eligible to claim a credit. Appellant, simply by filing a consolidated return, cannot change this statutory prohibition. *Cf. Emerson Elec. Co. v. Wasson*, 287 S.C. 394, 397, 339 S.E.2d 118, 120 (1986) (recognizing that "when two or more corporations join in a consolidated tax return, each remains an identifiable taxpayer" and that "[a] corporation does not lose its status as an identifiable entity by affiliating with another").

## IV. Conclusion

Based on the foregoing, we find the plain language of the Infrastructure Credit Statute is clear that only a corporation may claim the credit. Because the partnership of Centex Homes incurred the infrastructure project expenses, it did not qualify for the credit. Thus, there was no credit available to pass through to its partners and, in turn, to Appellant. Furthermore, we find the legislature's 2008 amendment to the Pass–Through Statute, which allowed limited liability companies to earn the same tax credits as a corporation, confirms

---

**12.** *See* S.C.Code Ann. § 12–6–5020(F) (providing that corporation, which files a consolidated return and is entitled to one or more income tax credits, must determine credits on a consolidated basis).

this result as it represents a purposeful act to restrict the types of entities that may earn and pass through tax credits. Although Appellant presents several potential methods of acquiring the credit directly or indirectly from its affiliates, we find none to be persuasive as the terms of the statutes may not be ignored or circumvented.

 Even though we question the reasoning for restricting the infrastructure credit to corporate entities, we believe the statutory language is clear that the legislature intended this limitation. The result here may appear to be inequitable; however, we are constrained to conclude it is correct under extant law. The wisdom of tax policy is exclusively within the purview of the legislature and may not be supplanted by this Court. *See Taiheiyo Cement U.S.A., Inc. v. Franchise Tax Bd.*, 204 Cal.App.4th 254, 138 Cal.Rptr.3d 536, 538–39 (2012) ("It is fundamental that the extent of allowable deductions is dependent exclusively upon legislative grace and does not turn upon equitable considerations and that a taxpayer claiming a deduction must bring himself *squarely within the terms of a statute expressly authorizing it.*" (citation omitted)). Accordingly, we affirm the ALC's order that denied Appellant's claim for the infrastructure credits.

**AFFIRMED.**

HEARN, J., and Acting Justice JAMES E. MOORE, concur.

TOAL, C.J., dissenting in a separate opinion in which KITTREDGE, J., concurs.

Chief Justice TOAL.

I respectfully dissent. In my view the ALC erred in concluding that Appellant's corporate affiliates were not eligible to claim infrastructure tax credits pursuant to section 12–6–3420 of the South Carolina Code. I would reverse and remand.

Section 12–6–3420 provides, in pertinent part:

(A) A corporation may claim a credit for the construction or improvement of an infrastructure project against taxes due under Section 12–6–530 or Section 12–11–20 for:

(1) expenses paid or accrued by the taxpayer;

(2) contributions made to a governmental entity; or

(3) contributions made to a qualified private entity in the case of water or sewer lines and their related facilities in areas served by a private water and sewer company.

S.C.Code Ann. § 12–6–3420 (Supp.2012).

In my view, section 12–6–3420 requires a corporation claim the credit on its corporate tax return, which must reflect permitted infrastructure related expenses or contributions by "the taxpayer." The Department argues that "the taxpayer" refers exclusively to the "corporation" mentioned in subsection (A).[13] I disagree. The term "taxpayer" is statutorily defined,

---

13. In my opinion, the Department's argument regarding the definition of "taxpayer" differs significantly, and notably, from prior interpretations. For example, in *Media General Communications, Incorporated v. South Carolina Department of Revenue*, 388 S.C. 138, 694 S.E.2d 525 (2010), three associated corporations (the corporations) challenged the accounting procedure the Department utilized in calculating the corporations' South Carolina income tax. That case centered on section 12–6–2320 of the South Carolina Code, which provides in pertinent part:
(A) If the allocation and apportionment provisions of this chapter do not fairly represent the extent of the taxpayer's business activity in this State, the taxpayer may petition for, or [the Department] may require, in respect to all or any part of the taxpayer's business activity, if reasonable:
(4) the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.
S.C.Code Ann. § 12–6–2320(4).
The Department initially issued tax assessments for the corporations utilizing the separate entity apportionment method (the SEA method), the Department's standard method for apportioning income among multi-state, related business entities. *Id.* at 142, 694 S.E.2d at 526–27 ("South Carolina's statutory apportionment methodology as utilized in the Department's assessments . . . results in income taxes and license fees . . . in the amount of $3,758,320."). The corporations filed a protest requesting the Department use the combined entity apportionment method (the CEA method). The CEA method's details are not pertinent to the instant case, but resulted in a significantly lower tax burden of $863,179. *Id.* at 142, 694 S.E.2d at 527. The Department determined that the CEA method fairly represented the corporations' business activities, but denied the corporations' petition on the ground that the Department did not have the authority to require use of the CEA method. *Id.* at 143, 694 S.E.2d at 527. The ALC reversed, finding that the allowance of the use of "any other method" as provided by section 12–6–2320(4) encompassed [the CEA method]. *Id.* The Department appealed, and advanced an argument rooted firmly in the statutory definition of "taxpayer:"

"unless otherwise required by context," to mean an individual, trust, estate, partnership, association, company, corporation, or any other entity subject to taxation. *See* S.C.Code Ann. § 12–6–30(1). In my view, the current context—the General Assembly's intent to encourage and reward infrastructure investment—does not demand limiting the statutory definition of "taxpayer." Moreover, in my opinion, the General Assembly's use of the word "the," preceding "taxpayer," does not evince an intent for that term to only denote corporation. Said another way, the General Assembly could have consistently used the term "corporation," rather than taxpayer. For example, and as Appellant notes, the statute would have then provided:

> A) A corporation may claim a credit for the construction or improvement of an infrastructure project against taxes due under Section 12–6–530 or Section 12–11–20 for:
>
> (1) expenses paid or accrued by the ~~taxpayer~~ *corporation;*

However, the General Assembly did not provide such limiting language. *See Brown v. Martin,* 203 S.C. 84, 88, 26 S.E.2d 317, 318 (1943) ("The General Assembly has power to prescribe legal definitions of its own language, and such definitions are generally binding upon the Courts, and should prevail." (citation omitted)); *see Bell Finance Co., Inc. v. S.C. Dept. of Consumer Affairs,* 297 S.C. 111, 114, 374 S.E.2d 918, 920 (Ct.App.1988) ("Where the statute, however, contains

---

The Department ... argues section 12–6–2320(A)(4) should not be construed to allow [the CEA method] based on the legislative intent expressed in the corporate tax statutes requiring the filing of tax returns by a single entity. Specifically, the South Carolina Code defines "taxpayer" as including "an individual, trust, estate, partnership, association, company, *corporation,* or any other entity subject to the tax imposed by this chapter or required to file a return." S.C.Code Ann. § 12–6–30(1) (2000). The Department notes the definition refers to a single corporation as a taxpayer and thus to separate filing requirements for each entity. Consequently, this definition must be used for the meaning of "taxpayer" as it appears in section 12–6–2320(A) and it limits the statute's application to a separate entity.
*Id.* at 148–49, 694 S.E.2d at 530 (finding that the ALC was not required to defer to an interpretation contrary to the plain language of the statute (emphasis in original)). However, in the instant case, the Department asks the Court to ignore the statutory definition of taxpayer to achieve their now intended result, one at odds with the General Assembly's intent.

words that are statutorily defined, the statutory definitions should generally be followed in interpreting the statute."); *see also Introini v. S.C. Nat'l Guard,* 828 F.Supp. 391, 396–97 (D.S.C.1993) (finding legislative definitions controlling).

In my opinion, section 12–6–3420 is not ambiguous, and the clear and plain meaning of the language allows Appellant to claim a credit for infrastructure expenses accrued by Centex Homes, the statutorily defined "taxpayer."

The Department relies heavily on the general rule that tax credits and exemptions are a matter of legislative grace, and thus, strictly construed against the taxpayer. *See, e.g., C.W. Matthews Contracting Co., Inc. v. S.C. Tax Comm'n,* 267 S.C. 548, 230 S.E.2d 223 (1976) ("However, [*Southern Soya Corp. v. Wasson,* 252 S.C. 484, 167 S.E.2d 311 (1969) ], and *Chronicle Publishers,* [*Inc. v. S.C. Tax Comm'n,* 244 S.C. 192, 136 S.E.2d 261 (1964) ] recognize a principle that applies in the present case: that a deduction is a matter of legislative grace; and that a statute allowing a deduction, if ambiguous, is construed strictly against the taxpayer."). However, this policy does not place a thumb on the scale of the Department, and simply means that "constitutional and statutory language will not be strained or liberally construed in the taxpayer's favor," and this Court will not seek an interpretation in the Department's favor "where the plain and unambiguous language leaves no room for construction." *CFRE, LLC v. Greenville Cnty. Assessor,* 395 S.C. 67, 74–75, 716 S.E.2d 877, 881 (2011) (citing *Se.–Kusan, Inc. v. S.C. Tax Comm'n,* 276 S.C. 487, 489, 280 S.E.2d 57, 58 (1981)). In fact, it is "[o]nly when the literal application of the statute produces an absurd result will we consider a different meaning." *CFRE,* 395 S.C. at 75, 716 S.E.2d at 881 (citation omitted). In my opinion, allowing Appellant to claim the infrastructure tax credit is not an absurd result given the General Assembly's clear intent.[14]

---

**14.** The Department argues that the term "taxpayer" is limited to the corporation mentioned in section 12–6–3420, and that if this Court relies on the statutory definition of "taxpayer," the "absurdity arises that subsections (A)(2) and (A)(3) remain devoid of a reference to any type of entity, leaving a relation back to the corporation as the only proper conclusion." According to the Department, to "argue that expenditures under these two subsections should be made by corporations only, but qualifying expenses under subsection (A)(1) opens the

The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *See Charleston Cnty. Sch. Dist. v. State Budget & Control Bd.*, 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993) (citing *Bankers Trust of S.C. v. Bruce*, 275 S.C. 35, 37–38, 267 S.E.2d 424, 425 (1980)). In my view, the statute is clearly intended to encourage and reward infrastructure investment in South Carolina, and the Department and ALC articulate an interpretation which frustrates the General Assembly's intent.

Additionally, in my opinion, the pass-through provisions of section 12–6–3310 allow the general partnership in this case to pass through the tax credit earned in section 12–6–3420 to Appellant. Section 12–6–3310 provides in pertinent part:

(B)(1) *Unless specifically prohibited,* an "S" corporation, limited liability company taxed as a partnership, or *partnership that qualifies for a credit pursuant to this article* may pass through the credit earned to each shareholder of the "S" corporation, member of the limited liability company, or partner of the partnership.

S.C.Code Ann. § 12–6–3310 (Supp.2012) (emphasis added). In my opinion, as discussed *supra,* because the expenses Centex Homes incurred qualify for the credit, the general partnership should be allowed to "pass through" this credit to its three corporate partners—wholly owned subsidiaries of Appellant. In my opinion, the "unless specifically prohibited" language in section 12–6–3310 is significant. There is no statutory provision specifically prohibiting a corporation from claiming a tax credit generated by a partnership the corporation controls, nor is there a provision explicitly preventing the partnership from passing this credit back to the entity's partners.

---

infrastructure credit to all forms of taxpayers is patently illogical." However, subsections (A)(2) and (A)(3) also do not contain the word "taxpayer" as used in subsection (A)(1). Thus, the Department actually advances the argument subsections (A)(2) and (A)(3) both relate back to the term "taxpayer" in subsection (A)(1), and taken together, all three subsections relate back to the term corporation, a *single* corporation, as found in section (A)'s first paragraph. In my opinion, it is just as plausible that the General Assembly intended taxpayer's *applicable* statutory definition to control subsections (A)(2) and (A)(3). Thus, in my view, there are competing and conceivable interpretations of the import of the term taxpayer in section 12–6–3420, and the Department fails to demonstrate any absurd result.

For the foregoing reasons, I would reverse the ALC's decision.

KITTREDGE, J., concurs.