805 S.E.2d 216

**CHARLESTON COUNTY ASSESSOR, Appellant,**

**v.**

**UNIVERSITY VENTURES, LLC, Respondent.**

**Appellate Case No. 2015-001106**
**Opinion No. 5516**

Court of Appeals of South Carolina.

Heard January 25, 2017

Filed September 14, 2017

Rehearing Denied October 19, 2017

---

Bernard E. Ferrara, Jr., Joseph Dawson, III, Austin Adams Bruner, and Johanna Serrano Gardner, all of North Charleston, for Appellant.

Morris Arthur Ellison and William Thomas Dawson, III, both of Womble Carlyle Sandridge & Rice, LLP, of Charleston, for Respondent.

KONDUROS, J.:

In this tax reassessment case, the Charleston County Assessor (the Assessor) appeals the administrative law court (ALC) finding the assessed value for 2011 of property owned by University Ventures LLC was incorrect. The Assessor contends the ALC erred in determining (1) the reassessment cycle at issue began in 2005 and (2) the property should be valued as a vacant lot. We affirm in part and reverse in part.

## PROCESS FOR ASSESSMENT OF REAL PROPERTY

This case involves the procedure for tax assessment of property in South Carolina. We provide an overview of the law governing tax assessment prior to discussing the facts.

The South Carolina Constitution directs the General Assembly to create the method by which property in South Carolina should be taxed. *See* S.C. Const. art. X, § 6. ("The General Assembly shall establish, through the enactment of general law ... the method of assessment of real property within the State that shall apply to each political subdivision within the State."); *Simkins v. City of Spartanburg*, 269 S.C. 243, 247, 237 S.E.2d 69, 71 (1977) ("[A]ssessment means the value placed upon property for the purpose of taxation by officials appointed for that purpose."). Accordingly, the General Assembly has established the process through which property is to be assessed through statutory scheme. "All property must be assessed uniformly and equitably throughout the State." S.C. Code Ann. § 12-43-210(A) (2014).

Additionally, the legislature has dictated that reassessment [1] happen once every five years. *See* S.C. Code Ann. § 12-43-217(A) (2014) ("Notwithstanding any other provision of law, once every fifth year each county or the State shall appraise and equalize those properties under its jurisdiction."). It has also provided: "Property valuation must be complete at the end of December of the fourth year.... In the fifth year, the county or State shall implement the program and assess all property on the newly appraised values." *Id.* Additionally, "[n]o reassessment program may be implemented in a county unless all real property in the county, including real property classified as manufacturing property, is reassessed in the same year." S.C. Code Ann. § 12-43-210(B) (2014). Section 12-43-217(B) allows the implementation of the five-year-reassessment program to be postponed one year. *See* S.C. Code Ann. § 12-43-217(B) ("A county by ordinance may postpone for not more than one property tax year the implementation of revised values resulting from the equalization program provided pursuant to subsection (A).").

The amount the value of real property can be increased for each five-year reassessment is limited to 15%. *See* S.C. Const. art. X, § 6 ("Each political subdivision shall value real property by a method in which the value of each parcel of real

---

1. Reassessment is defined as "[a]n official revaluation of property, often repeated periodically, for the levying of a tax." *Assessment,* Black's Law Dictionary (10th ed. 2014).

property, adjusted for improvements and losses, does not increase more than fifteen percent every five years unless ... an assessable transfer of interest[2] occurs."); S.C. Code Ann. § 12-37-3140(B) (2014) ("Any increase in the fair market value of real property attributable to the periodic countywide appraisal and equalization program implemented pursuant to [s]ection 12-43-217 is limited to fifteen percent within a five-year period to the otherwise applicable fair market value. This limit must be calculated on the land and improvements as a whole.").

However, this limit does not apply to the fair market value of additions or improvements[3] to real property in the year those additions or improvements are first subject to property tax, nor do[es it] apply to the fair market value of real property when an assessable transfer of interest occurred in the year that the transfer value is first subject to tax. § 12-37-3140(B). A new structure cannot "be listed or assessed for property tax until it is completed and fit for the use for which it is intended," which is shown "by the issuance of the certificate of occupancy or the structure actually is occupied if no certificate is issued." S.C. Code Ann. § 12-37-670 (2014).

## FACTS/PROCEDURAL HISTORY

On December 5, 2006, University Ventures purchased vacant land located in North Charleston for $1,253,224. In April of 2008, University Ventures received a building permit and began construction on the land of a 115-room Hampton Inn and Suites, with the construction cost estimated at $7,952,998. The hotel was completed, and a certificate of occupancy was issued on April 22, 2009. The Assessor issued a 2010 tax assessment for the property with a value of $8,180,000, which University Ventures did not challenge.

---

**2.** "'Assessable transfer of interest' means a transfer of an existing interest in real property that subjects the real property to appraisal." S.C. Code Ann. § 12-37-130(4) (2014).

**3.** "'Additions' or 'improvements' mean an increase in the value of an existing parcel of real property because of: (a) new construction; (b) reconstruction; (c) major additions to the boundaries of the property or a structure on the property; (d) remodeling; or (e) renovation and rehabilitation, including installation." S.C. Code Ann. § 12-37-3130(1) (2014).

The Assessor conducted a reassessment with a uniform date of value of December 31, 2008. On May 21, 2009, Charleston County Council adopted an ordinance [4] providing for the postponement of the implementation of the 2010 revised values resulting from the next county-wide equalization program until 2011.[5]

The Assessor sent a notice of reassessment dated June 30, 2011, to University Ventures, stating the property's fair market value for the 2011 Reassessment was $9,630,000 based on a date of value of December 31, 2008, but was limited by the 15% cap on increases in value at $9,407,000.[6] In September 2011, University Ventures objected to the valuation for the property. The Assessor reviewed the valuation and made no adjustment.

University Ventures applied for review by the Charleston County Board of Assessment Appeals (the Board). Following a conference, the Board determined because the hotel was incomplete at the end of 2008, the property should be assessed as vacant land and valued it at $628,439.

The Assessor filed a request for a contested case hearing with the ALC. At the hearing, Walter L. Ziegler, Sr., who was employed by and performed appraisals for the Assessor's Office, testified the property was valued at $404,000 for both the 2008 and 2009 tax bills. He provided that once the hotel

---

4. That ordinance stated:

 The implementation of revised values from the 2010 county-wide appraisal and equalization program are hereby directed to be postponed for one property year. The postponement directed applies to all revised values.... In accordance with Act No. 93 of 1999, the postponement directed by this Ordinance shall not affect the schedule of the appraisal and equalization program required pursuant to ... [s]ection 12-43-217.

 Charleston County Ord. # 1586. The pertinent portion of Act No. 93 amended section 12-43-217 of the South Carolina Code to provide for the postponement of the implementation of the revised valuations for reassessment and equalization by not more than one year. Act No. 93 § 12(B), 1999 S.C. Acts 316.

5. The Assessor refers to the reassessment that was implemented in 2011 as the 2010 Reassessment. We will call it the 2011 Reassessment to avoid confusion with the yearly assessment for 2010.

6. $9,407,000 is a 15% increase from the previously assessed value of $8,180,000.

was finished in 2009, the Assessor sent University Ventures an assessment dated May 14, 2010, valuing the property at $8,180,000. He testified the tax bill was for hotel, land, and improvements, which were valued at $8,180,000. He further testified that for the county-wide reassessment issued in 2011, the Assessor valued the property at $9,630,000 but the increase was limited to $9,407,000 because of the 15% cap. On cross-examination, Ziegler indicated the last general five-year reassessment done for the county was based on values as of December 31, 2003. He stated he was unsure in what year that reassessment was supposed to have taken place but he knew it was delayed one year. He also noted that assessment was actually implemented in 2005. He further explained reassessment was to be performed every five years according to state statute. However, he testified the next reassessment was supposed to be completed in 2010. He provided it was supposed to be implemented in 2010 and it was delayed until 2011. He recapped that implementation for the reassessments was delayed for 2004 until 2005 and for 2010 until 2011.

Both sides presented real estate appraisal experts who testified as to the value of the property. The Assessor's expert provided a value of the property on December 31, 2008, based on the hypothetical assumption the hotel was complete at that time. He valued it at $8,861,350 for tax assessment purposes. He believed the hotel was 65% to 70% complete on December 31, 2008, but he did not examine the property until 2014. He testified the value of the land alone on December 31, 2008, was $990,000. Alternatively, University Ventures' expert testified the value of the land alone on December 31, 2008, was $734,000. He indicated the hotel was 65% complete on December 31, 2008. He placed the hypothetical value of the hotel on December 31, 2008, if it had been complete, at $8,450,000. He testified the actual value of the hotel on that date was $3,959,400. He provided he had never heard of a building being taxed on its value as a partially complete building; he believed property could only be taxed on the value of the land until the building was completed.

Following the hearing, the ALC determined the Assessor had misapplied section 12-43-217 of the South Carolina Code and because the improvements—the hotel—were not completed at the time of the valuation date, the property was appro-

priately valued as vacant land. The ALC found the preponderance of the evidence supported University Ventures' position the reassessment cycle at issue was comprised of the years 2005, 2006, 2007, 2008, and 2009. The ALC determined the Assessor implemented the reassessment using the wrong years—2006, 2007, 2008, 2009, and 2010. The ALC calculated the value for the land value to be $860,537 by averaging the experts' values of the unimproved land. This appeal followed.

## STANDARD OF REVIEW

When a tax assessment case reaches the ALC "as a request for judicial review of [a] County Board of Assessment Appeals decision upholding [an] [a]ssessor's valuation," the proceeding in front of the ALC is a de novo hearing. *Smith v. Newberry Cty. Assessor*, 350 S.C. 572, 577, 567 S.E.2d 501, 504 (Ct. App. 2002); *see also Reliance Ins. Co. v. Smith*, 327 S.C. 528, 534, 489 S.E.2d 674, 677 (Ct. App. 1997) ("[A]lthough a case involving a property tax assessment reaches the AL[C] in the posture of an appeal, the AL[C] is not sitting in an appellate capacity and is not restricted to a review of the decision below. Instead, the proceeding before the AL[C] is in the nature of a *de novo* hearing.").

"In reaching a decision in a contested violation matter, the ALC serves as the sole finder of fact in the *de novo* contested case proceeding." *S.C. Dep't of Revenue v. Sandalwood Soc. Club*, 399 S.C. 267, 279, 731 S.E.2d 330, 337 (Ct. App. 2012). "The Rules of Procedure for the Administrative Law Judge Division require that the AL[C] make independent findings of fact in contested case hearings, and the Administrative Procedures Act clearly contemplates that the AL[C] will make [its] own findings of fact in a contested case hearing." *Reliance Ins. Co.*, 327 S.C. at 534, 489 S.E.2d at 677 (citation omitted). When the evidence conflicts on "an issue, the [c]ourt's substantial evidence standard of review defers to the findings of the fact-finder." *Risher v. S.C. Dep't of Health & Envtl. Control*, 393 S.C. 198, 210, 712 S.E.2d 428, 435 (2011).

The review of the [ALC]'s order must be confined to the record. The court may not substitute its judgment for the judgment of the [ALC] as to the weight of the evidence on questions of fact. The court of appeals may affirm the decision or remand the case for further proceedings; or, it

may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C. Code Ann. § 1-23-610(B) (Supp. 2016).

 "The decision of the [ALC] should not be overturned unless it is unsupported by substantial evidence or controlled by some error of law." *Original Blue Ribbon Taxi Corp. v. S.C. Dep't of Motor Vehicles*, 380 S.C. 600, 604, 670 S.E.2d 674, 676 (Ct. App. 2008). "A reviewing court may reverse or modify an administrative decision if the findings of fact are not supported by substantial evidence." *Risher*, 393 S.C. at 210, 712 S.E.2d at 434. "Substantial evidence is 'evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached.'" *Se. Res. Recovery, Inc. v. S.C. Dep't of Health & Envtl. Control*, 358 S.C. 402, 407, 595 S.E.2d 468, 470 (2004) (quoting *Lark v. Bi-Lo*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981)). "Substantial evidence . . . is more than a mere scintilla of evidence." *Original Blue Ribbon Taxi Corp.*, 380 S.C. at 605, 670 S.E.2d at 676.

## LAW/ANALYSIS

### I. Years in Reassessment Cycle

 The Assessor argues the ALC misconstrued South Carolina law and the Charleston County ordinance postponing reassessment when it found the reassessment cycle at issue in the case ended in 2009 instead of 2010. We disagree.

 "Questions of statutory interpretation are questions of law, which this [c]ourt is free to decide without any deference to the tribunal below." *Duke Energy Corp. v. S.C. Dep't of Revenue*, 415 S.C. 351, 355, 782 S.E.2d 590, 592 (2016). "The

cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Centex Int'l, Inc. v. S.C. Dep't of Revenue*, 406 S.C. 132, 139, 750 S.E.2d 65, 69 (2013) (quoting *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007)). "The language of a tax statute must be given its plain and ordinary meaning in the absence of an ambiguity therein." *Duke Energy Corp.*, 415 S.C. at 355, 782 S.E.2d at 592; *see also Lockwood Greene Eng'rs, Inc. v. S.C. Tax Comm'n*, 293 S.C. 447, 449, 361 S.E.2d 346, 347 (Ct. App. 1987) ("A statutory provision should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute."). "[W]e must follow the plain and unambiguous language in a statute and have 'no right to impose another meaning.'" *Grier v. AMISUB of S.C., Inc.*, 397 S.C. 532, 535-36, 725 S.E.2d 693, 695 (2012) (quoting *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000)). "When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning." *Centex Int'l, Inc.*, 406 S.C. at 139, 750 S.E.2d at 69 (quoting *Sloan*, 371 S.C. at 498, 640 S.E.2d at 459). "However, 'the statute must be read as a whole and sections which are part of the same general statutory law must be construed together and each one given effect.'" *CFRE, LLC v. Greenville Cty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) (quoting *S.C. State Ports Auth. v. Jasper Cty.*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006)).

The legislature has ordered that reassessment happen once every five years: "Notwithstanding any other provision of law, once every fifth year each county or the State shall appraise and equalize those properties under its jurisdiction." S.C. Code Ann. § 12-43-217(A) (2014). The legislature has also mandated: "Property valuation must be complete at the end of December of the fourth year.... In the fifth year, the county or State shall implement the program and assess all property on the newly appraised values." *Id.* Further, a reassessment program cannot "be implemented in a county unless all real property in the county ... is reassessed in the same year." S.C. Code Ann. § 12-43-210(B) (2014). A county can postpone the *implementation* of the five-year-reassessment program for one year. *See* S.C. Code Ann. § 12-43-217(B) (2014) ("A county by ordinance may postpone for not more than one property

tax year the implementation of revised values resulting from the equalization program provided pursuant to subsection (A).").

The Assessor contends a reassessment cycle must be viewed prospectively. Therefore, in this case, because the reassessment was to be implemented in 2010 (implementation postponed to 2011), the fifth year of the cycle was 2010, and the new cycle would encompass 2011, 2012, 2013, 2014, and 2015. University Ventures maintains the five-year cycle actually ended in 2009 based on looking back at previous cycles and counting forward, making the cycle at issue in this case 2005, 2006, 2007, 2008, and 2009.[7]

The only evidence in the record about when the five-year cycle began was provided by Ziegler. He testified the previous cycle ended in 2004. This end date is supported by agreement of the Assessor in this court's opinion for *LMP Properties*. *See LMP Props., Inc.*, 403 S.C. at 197, 743 S.E.2d at 89 (providing that at a contested case hearing before the ALC at which the Assessor sought review of the Board's decision, "the parties[, including the Assessor,] agreed that the date for valuing the properties was December 31, 2003, because 2004 was the year of the countywide reassessment"). Additionally, although not binding on us, the ALC has recognized in several cases in which the Assessor was a party that 1999 was a reassessment year, although the Assessor ultimately delayed the implementation by two years to 2001. *See Northbridge Assocs., LLC v. Charleston Cty. Assessor*, 03-ALJ-17-0148-CC (filed Mar. 30, 2004); *Charleston Cty. Assessor v. Bennett*, 02-ALJ-17-0268-

---

7. We note the parties agreed the date of value for the property was December 31, 2008. However, the Assessor's rationale for why that date is proper is flawed. It maintains 2009 is the fourth year of the cycle and tax values can be determined at any time before December 31 of the fourth year. "Ordinarily, '[t]he pertinent date to determine the value of property for a given tax year is December 31st of the preceding year.'" *Charleston Cty. Assessor v. LMP Props., Inc.*, 403 S.C. 194, 199, 743 S.E.2d 88, 91 (Ct. App. 2013) (alteration by court) (quoting *Lindsey v. S.C. Tax Comm'n*, 302 S.C. 274, 275 n.1, 395 S.E.2d 184, 185 n.1 (1990)). However, section 12-43-217(A) clearly states valuation "must be complete at the end of" the fourth year of the reassessment cycle. University Ventures' position—that the fourth year of the cycle was 2008—is correct as further discussed *infra*. The Assessor's attempt to make the 2008 valuation date conform to its reassessment cycle argument is strained and unpersuasive.

CC, n.1 (filed Apr. 29, 2003); *Charleston Cty. Assessor v. Pack Rat Investments*, 02-ALJ-17-0120-CC, n.3 (filed Apr. 29, 2003). The fact that 1999 was a reassessment year supports Ziegler's testimony that 2004 was the end of the subsequent reassessment cycle.

The Assessor's repeated pattern of delaying the implementation year for reassessment has resulted in confusion and inconsistency because it has created a six-year cycle. However, the statute is clear the delay only applies to the implementation; any delay should have no impact on the five-year reassessment cycle. The confusion over which value to use for the hotel seems to have arisen in part from the Assessor delaying the 1999 reassessment to 2001, instead of 2000.

The Assessor caused the problem by confusing *the permissible one-year delay in implementation* with an impermissible delay in starting *the clock running* on the five-year cycle. The only evidence in the record supports the ALC's determination the Assessor incorrectly calculated the five-year reassessment period and the relevant period actually ended in 2009. The evidence further supports the ALC's finding the Assessor's reasoning for its actions unconvincing. Therefore, we affirm these findings.

## II. Value of Property for 2011 Tax Reassessment

 The Assessor contends the ALC erred in valuing the property as a vacant lot for the purposes of the 2011 Reassessment. We agree.

"All property must be valued for taxation at its true value in money...." S.C. Code Ann. § 12-37-930 (2014). True value is the price which the property would bring following reasonable exposure to the market, where both the seller and the buyer are willing, are not acting under compulsion, and are reasonably well informed of the uses and purposes for which it is adapted and for which it is capable of being used.

*Id.*

The fair market value is determined at the later of:

(a) the base year[8] ...;

8. "For purposes of determining a 'base year' fair market value pursuant to this section, the fair market value of real property is its appraised

(b) December thirty-first of the year in which an assessable transfer of interest has occurred;

(c) as determined on appeal; or

(d) as it may be adjusted as determined in a countywide reassessment program conducted pursuant to [s]ection 12-43-217, but limited to [a 15% increase].

S.C. Code Ann. § 12-37-3140(A)(1) (2014). "[T]he fair market value of subsequent improvements and additions to the property" must be added to this value. S.C. Code Ann. § 12-37-3140(A)(2) (2014). A new structure cannot "be listed or assessed for property tax until it is completed and fit for the use for which it is intended," which is shown "by the issuance of the certificate of occupancy or the structure actually is occupied if no certificate is issued." S.C. Code Ann. § 12-37-670 (2014).

"Questions of statutory interpretation are questions of law, which this [c]ourt is free to decide without any deference to the tribunal below." *Duke Energy Corp.*, 415 S.C. at 355, 782 S.E.2d at 592. "The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Centex Int'l, Inc.*, 406 S.C. at 139, 750 S.E.2d at 69 (quoting *Sloan*, 371 S.C. at 498, 640 S.E.2d at 459). "The language of a tax statute must be given its plain and ordinary meaning in the absence of an ambiguity therein." *Duke Energy Corp.*, 415 S.C. at 355, 782 S.E.2d at 592; *see also Lockwood Greene Eng'rs, Inc.*, 293 S.C. at 449, 361 S.E.2d at 347 ("A statutory provision should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute."). "However, regardless of how plain the ordinary meaning of the words in a statute, courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not have been intended by the General Assembly." *Duke Energy Corp.*, 415 S.C. at 355, 782 S.E.2d at 592. "If possible, the [c]ourt will construe a statute so as to escape the absurdity and carry the intention into effect." *Id.* "In so doing, the [c]ourt should not concentrate on isolated phrases within the statute, but rather, read the statute as a whole and in a manner consonant and in harmony with its

value applicable for property tax year 2007." S.C. Code Ann. § 12-37-3140(C) (2014).

purpose." *Id.*; *see also CFRE, LLC*, 395 S.C. at 74, 716 S.E.2d at 881 ("However, 'the statute must be read as a whole and sections which are part of the same general statutory law must be construed together and each one given effect.'" (quoting *S.C. State Ports Auth.*, 368 S.C. at 398, 629 S.E.2d at 629)).

"[T]he Assessor is required to prove the correctness of the valuation he is seeking; the Assessor is not required ... to prove the incorrectness of the Board's decision." *Reliance Ins. Co. v. Smith*, 327 S.C. 528, 534, 489 S.E.2d 674, 677 (Ct. App. 1997). "A taxpayer contesting an assessment has the burden of showing that the valuation of the taxing authority is incorrect." *Cloyd v. Mabry*, 295 S.C. 86, 88, 367 S.E.2d 171, 173 (Ct. App. 1988). "Ordinarily, this will be done by proving the actual value of the property. The taxpayer may, however, show by other evidence that the assessing authority's valuation is incorrect. If he does so, the presumption of correctness is then removed and the taxpayer is entitled to appropriate relief." *Id.* at 88-89, 367 S.E.2d at 173 (citation omitted).

Because the 2010 Assessment was the first time the completed hotel was assessed at the value of a completed building—a value University Ventures did not challenge— the 2010 Assessment value would be the proper value to use from that time until the next reassessment. Because the value set when the hotel was complete was more current than the value of what was actually in existence on December 31, 2008—when valuation for county-wide reassessment was performed—there is no reason to change the value during the implementation of reassessment. *See* § 12-37-3140(A)(1) (providing a property's fair market value is the value applicable at the later of certain events). Nothing changed in the time since the hotel was first appraised until the 2011 Reassessment—no Assessable Transfers of Interest or additional improvements occurred.

The hotel could not be valued as an incomplete hotel because of the statutory requirement that a new structure cannot "be listed or assessed for property tax until it is completed and fit for the use for which it is intended." S.C. Code Ann. § 12-37-670(A). Whether it is complete and fit for use is demonstrated "by the issuance of the certificate of

occupancy," which did not occur until 2009. S.C. Code Ann. § 12-37-670(B). A hypothetical value of what the hotel would have been worth on December 31, 2008, if it was completed is not the proper value to use for the 2011 Reassessment. It would produce an absurd result for the property to be valued as if a finished hotel were on it when that was not the case. It also would be absurd for the property to be assessed as a completed hotel one year, revert to vacant land for the reassessment year, and then return to the value at which it was originally assessed for the following year's assessment, as the ALC determined should happen.

The value of the completed hotel was calculated at a date after the date of valuation for reassessment. Because its valuation had already been updated and was the most current, it did not need to be reassessed. If reassessed values had gone into effect the year before they did, the value of the completed hotel would have been what was assessed and not changed the following years. The purpose of reassessment is for property values to be up to date but also all evaluated at the same time. However, the statute specifically provides that if a property has improvements or additions, which by definition includes new construction, those improvements are eligible to be assessed once completed. Because the hotel was completed after valuation was finished for other properties in Charleston County, the initial finished value is the correct value to use. Therefore, the ALC erred in valuing the property as vacant land for the 2011 reassessment. Accordingly, that determination is reversed and instead the property should be valued at $8.18 million as it was when it was first completed and assessed.[9]

**CONCLUSION**

The ALC correctly determined Charleston had delayed its reassessment by more than the one year allowed by the

---

9. The Assessor further maintains the ALC erred when it placed only a land value on the property for the 2011 Reassessment because the property assessment for the previous year included the completed hotel and University Ventures did not appeal that assessment. Based on our decision of the other issues on appeal, we need not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

Legislature. However, the ALC erred in setting the value of the property as vacant land and instead the property should be valued at $8.18 million as it was when it was first completed and assessed. Accordingly, the ALC's decision is

**AFFIRMED IN PART AND REVERSED IN PART.**

LOCKEMY, C.J., and MCDONALD, J., concur.